The **BRITTANY SOBERY FAMILY LIMITED PARTNERSHIP,** d/b/a **Bridgeport Crossing Apartments, Plaintiff/Respondent,**

v.

**COINMACH CORPORATION, Defendant/Appellant.**

**No. ED 97800.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 15, 2013.

Robert Schultz III, Ronald Jay Eisenberg, co-counsel, Chesterfield, MO, for Appellant.

Brian Lee Harvell, Justin Mark Weinrich, co-counsel, St. Louis, MO, for Respondent.

LISA S. VAN AMBURG, Judge.

## INTRODUCTION

Coinmach Corporation ("Coinmach") appeals from the judgment entered, after a court-tried case, in favor of The Brittany Sobery Family Limited Partnership, d/b/a Bridgeport Crossing Apartments ("Bridgeport"). Coinmach claims the trial court erred by finding: (1) Coinmach's right of first refusal terminated during its holdover tenancy; (2) Coinmach had no contractual right to renew the leasehold for another ten years; (3) Coinmach's holdover tenancy was a month-to-month tenancy as opposed to a year-to-year tenancy; and (4) Bridgeport was entitled to damages in the amount of $17,588.47. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 1991, the parties' predecessors in interest entered into a Standard Laundry Equipment Lease ("Original Lease") to equip and manage a coin-operated laundry facility in an apartment complex located at 4015 Brittany Circle, Bridgeton, Missouri ("Leased Premises"). The Original Lease defined the term as ten years with a termination date of January 15, 2001.

Paragraph eight of the Original Lease contained a right of first refusal option giving Coinmach the right to match any *bona fide* offer from third parties. The record is unclear as to when but at some point the parties eliminated an automatic right of renewal clause from the terms of the Original Lease.

Several months prior to expiration of the Original Lease term, the parties executed an extension of the Original Lease by addendum ("Lease Addendum"), extending the lease term an additional twelve months, from its "now current expiration date," to January 15, 2002. The Lease Addendum specifically stated, "[a]ll other terms and conditions of said Lease shall remain in full force and effect except as amended herein."

Following expiration of the Lease Addendum on January 15, 2002, Coinmach remained in possession of the Leased Premises without the benefit of a written lease. Coinmach continued to pay rent on a monthly basis just as in the Original Lease through March 2009. The parties stipulated Coinmach was a holdover tenant "at least through March, 2009."

On March 30, 2009, Bridgeport executed a new lease with a third party for the provision of laundry services on the Leased Premises. The next day Bridgeport notified Coinmach it was canceling the holdover tenancy and demanded removal of Coinmach's laundry machines by April 30, 2009. Coinmach responded that the cancellation of the leasehold was not valid, citing its right of first refusal contained in the Original Lease and presented Bridgeport with an offer matching the terms of the third-party lease. Coinmach also asserted the term of its holdover tenancy continued on a year-to-year basis, and therefore the then current term of its holdover tenancy commenced January 15, 2009, and continued until January 15, 2010.

Bridgeport refused Coinmach's matching offer and repeatedly demanded Coinmach vacate. Coinmach refused and remained in the Leased Premises operating its laundry services up through entry of judgment.

Bridgeport filed a petition seeking Ejectment, Unlawful Detainer, Trespass, Declaratory Judgment and Injunctive Relief against Coinmach. Following a bench trial the court entered judgment in favor of Bridgeport. The trial court found: Coinmach's right of first refusal terminated after January 15, 2003; Coinmach's holdover tenancy terminated on March 30, 2009, effective April 30, 2009; Coinmach unlawfully detained the Leased Premises after April 30, 2009, and Bridgeport was entitled to damages in the amount of $17,588.47. Coinmach appeals.

## STANDARD OF REVIEW

On appeal from a court-tried case we accept evidence and inferences in a light most favorable to the prevailing party, disregarding all contrary evidence, and will affirm the decision of the trial court unless no substantial evidence supports it, it is against the weight of the evidence or it erroneously declares or applies the law. *Sachs Elec. Co. v. HS Const. Co.*, 86 S.W.3d 445, 453 (Mo.App. E.D.2002); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## DISCUSSION

In its first point, Coinmach argues the trial court erred by finding Coinmach's right of first refusal terminated twelve months into its holdover tenancy. In its second point, Coinmach argues the court erred by finding Coinmach had no contractual right to renew the leasehold under the terms of the right of first refusal clause. Coinmach presents interrelated arguments

in its first two points. Therefore, we will address these two points as one.

■ Generally, when a tenant holds over with the landlord's consent, a new tenancy arises and the law presumes that the holding-over is subject to the terms and conditions of the original lease, unless the contrary be shown. *Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C.*, 119 S.W.3d 101, 111 (Mo.App. W.D.2003).

Paragraph eight of the Original Lease reads as follows:

*"Lessor hereby grants Lessee the right of first refusal to meet the terms of any bonafide offer from any party proposing to provide laundry equipment for tenant use at Lessor's property, either by sale or lease, to be installed by such other party or by Lessor at any time within twelve (12) months following the expiration of the term, or any renewal term, of this lease,* whether such proposal is made before, at, or after the expiration of this lease's term, or any renewal term. Prior to agreeing to any such proposal to lease space to any competitor, or to purchase and install equipment, Lessor will give Lessee a copy of the new proposal in writing, and Lessee will have thirty (30) business days to match the new proposal, or submit a better offer. If Lessee matches the new proposal, or submits a better one, Lessor agrees to sign an agreement with Lessee reflecting the terms of the new proposal. If Lessor does not honor Lessee's right of first refusal, Lessee may declare this lease as having been renewed under its same terms ([sic] or a period equal to the original lease term; such additional renewal term to commence on the day immediately following the last day of the last effective lease term, and lessee may reinstall its equipment, or Lessee may seek any other remedy allowed by law, including com-

pensation calculated as stated in paragraph 5(b) above." (emphasis added).

Relying on paragraph eight, Coinmach argues the trial court misapplied the law or misconstrued the intent of the parties by failing to recognize that Coinmach's right of first refusal remained throughout the holdover tenancy. Coinmach asserts the court misapplied the law because there is no evidence upon which it could find the right of first refusal terminated. We disagree.

 The trial court relied on the language in the lease as evidence that the parties did not intend for the right of first refusal to extend indefinitely into a holdover tenancy. Where the language of a contract is free from ambiguity, its construction is for the court, as a matter of law. *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 844 (Mo.App. E.D.2008). Unambiguous language in a lease is evidence of the parties' intent. *Washington University v. Royal Crown Bottling Co. of St. Louis*, 801 S.W.2d 458, 464 (Mo.App. E.D. 1990). Therefore the trial court's decision was based on evidence and the court correctly applied the law.

Coinmach next contends the trial court misconstrued the language of the lease because paragraph eight contains the phrase, "any renewal term," which evidences an intent to include holdover tenancies. We disagree.

 We review the language of a lease *de novo* in order to construe the parties' intent. *Stahlhuth v. SSM Healthcare of St. Louis*, 289 S.W.3d 662, 670 (Mo.App. E.D.2009). When interpreting lease agreements, we follow the rules of construction governing contract. *Kamada v. RX Group Ltd.*, 639 S.W.2d 146, 148 (Mo.App. E.D.1982). We first examine the plain language of the agreement to determine whether it clearly addresses the issue at hand. *TAP Pharmaceutical Prods. Inc. v. State Bd. of Pharmacy*, 238 S.W.3d 140, 143 (Mo. banc 2007). If the language is clear and addresses the disputed matter, the inquiry ends. *TAP*, 238 S.W.3d at 143. Language is considered unclear, or ambiguous, if it is reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person. *Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc.*, 171 S.W.3d 70, 73 (Mo.App. E.D.2005). If the language is ambiguous, courts will look to the language in the context of the entire contract and parol evidence to determine the intent of the parties, including the practical construction the parties themselves have placed on the contract by their acts and deeds, and external circumstances. *TAP*, 238 S.W.3d at 143; *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 15 (Mo.App. W.D.2010). A contract between parties is not rendered ambiguous merely because the parties do not agree upon the proper construction. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973).

The language contained in paragraph eight states the lease has "terms" which are subject to "expire." Webster's Third New International Dictionary (1996) defines "term" as "a limited or definite extent of time: the time for which something lasts." Therefore the right in question applies to a limited period which inherently has a beginning, middle and an end. It is well established that written leases must "expire" before a holdover tenancy arises. *See Behlmann v. Weaks*, 150 S.W.3d 153, 157 (Mo.App. E.D.2004); *and Davis v. Jefferson Sav. & Loan Ass'n*, 820 S.W.2d 549 (Mo.App. E.D.1991). Paragraph eight can only be reasonably interpreted to mean that twelve months after the lease term "expires," the right of first refusal ends. Furthermore the Lease Addendum also

establishes that the Original Lease term would "expire," but for the extension granted in the Lease Addendum.

■ Coinmach argues the phrase, "any renewal term," plainly evidences an intent to include holdover tenancies. However Coinmach's proposed interpretation fails to take into account the construction of the paragraph as a whole and renders the limiting language contained within the very same paragraph meaningless. A contract should be interpreted to ascertain the intention of the parties in a manner that avoids rendering other terms meaningless. *Stahlhuth*, 289 S.W.3d at 670. If we accepted that the right of first refusal automatically renewed itself when Coinmach became a holdover tenant, the logical result would be a perpetual renewal of the right throughout each holdover tenancy period. The right would never simply "expire," but would require the parties to take explicit steps to terminate the lease first and then wait another twelve months before the right could finally terminate. This result would undermine and render meaningless the plain language of the very same paragraph which attempts to limit the right to twelve months following the "expiration" of the lease. Paragraph eight plainly states that twelve months after the lease "term" "expires" the right of first refusal ends. Accordingly, the trial court did not err in finding the language of paragraph eight plainly states the parties intended the right of first refusal to end twelve months following expiration of the Lease Addendum. Points one and two are denied.

In its third point, Coinmach argues the trial court erred in ruling Coinmach's holdover tenancy was on a month-to-month basis instead of a year-to-year basis because the evidence was insufficient to sustain this finding. We disagree.

■ Generally, when a tenant for years holds over with the consent of the landlord the tenancy will be from year-to-year, but may be established to be for a shorter period, according to intention of the parties. *Kilbourne v. Forester*, 464 S.W.2d 770, 774 (Mo.App. E.D.1970); *See Minton v. Steinhauer*, 243 Mo. 51, 147 S.W. 1014, 1015 (1912) (holding over for more than one year in a year-to-year lease created a year-to-year tenancy).

■ Here, although the original term of the lease was for a period of ten years and Coinmach held over for more than several years, sufficient evidence suggests the parties intended for the holdover period to continue on a month-to-month basis. The automatic renewal clause contained in the Original Lease was obliterated. This clause stated the lease would continue for seven years in the event a holdover tenancy arose subject to all the terms of the Original Lease. It is reasonable to infer that, by eliminating this automatic renewal provision, the parties did not intend for the lease to automatically renew subject to all of the terms, or renew for a period longer than one year.

Prior to the expiration of the Original Lease term, the parties extended the term by entering into a written Lease Addendum. The Lease Addendum stated that only one additional year to the term of the Original Lease would apply. Thereafter, the parties did not enter into any written extensions, suggesting they did not wish any further year-long extensions of the lease term. Therefore, there was sufficient evidence to support the trial court's finding that Coinmach's tenancy was on a month-to-month term. We find no error. Point denied.

In its fourth point, Coinmach argues the trial court erred in awarding damages of $17,588.47 to Bridgeport because the evidence submitted at trial was insufficient to

support a finding of the reasonable rental value of the Leased Premises. Specifically, Coinmach argues that no rental payments were due according to the Original Lease and the award did not strictly adhere to the payment terms of the Original Lease because Coinmach had a right to offset rental payments by the cost of one washing cycle and one drying cycle for each machine per day. We disagree.

It is well established that damages for rents and profits in an action of unlawful detainer may be measured by the reasonable rental value of the rented premises during the period of unlawful detention and are not confined to the sum fixed by the lease. *Gordon v. Williams,* 986 S.W.2d 470, 474 (Mo.App. E.D.1998); *Del Commune v. Bussen,* 179 S.W.2d 744, 748 (Mo.App. E.D.1944). Competent and substantial evidence is required to support an award of damages. *Carmel Energy, Inc. v. Fritter,* 827 S.W.2d 780, 782 (Mo. App. W.D.1992). Substantial proof for purposes of establishing damages may include statements of accounts receivable. *See Theilen v. Theilen,* 847 S.W.2d 116, 120 (Mo.App. W.D.1992). When the trial court calculates an amount that is "within the range of evidence," an appellate court generally will decline to find the determination erroneous or to weigh the evidence. *Id.* at 118–19.

The court calculated Bridgeport's damages as the reasonable rental value of the Leased Premises. The court determined the reasonable rental value of the Leased Premises from evidence submitted by Coinmach of itemized amounts it collected from the Leased Premises and from the payment terms set out in the Original Lease.

We find the court had competent and substantial evidence upon which to base the award. Therefore, the trial court did not err in awarding damages to Bridgeport in the amount of $17,588.47. Point denied.

## CONCLUSION

The judgment of the trial court is affirmed.

KATHIANNE KANUP CRANE, P.J. and MARY K. HOFF, J., concur.