

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **UNION ELECTRIC COMPANY D/B/A AMEREN MISSOURI,** | **WD78624** |
| **Respondent,** | **OPINION FILED:** |
| **v.** | **March 22, 2016** |
| **A.P. READ HOMES, LLC,** | |
| **Appellant.** | |

**Appeal from the Circuit Court of Adair County, Missouri
The Honorable Kristie Jean Swaim, Judge**

**Before Division Three:
Joseph M. Ellis, Sr. J. Presiding[1], Thomas H. Newton, and James Edward Welsh, JJ.**

A.P. Read Homes appeals the circuit court's judgment finding it liable for damages to a utility line owned by Union Electric Company (referred to herein as "Ameren"). We affirm.

## Background

In August 2014, Ameren filed a two-count petition against Read Homes for damages to its utility line located on property owned by Read Homes on Jamison Street in Kirksville (in Count II) and for damages to another utility line on neighboring property also owned by Read

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as a Senior Judge.

Homes (in Count I).[2]  Ameren alleged that Read Homes "failed to request the location of Ameren's underground utility equipment and/or failed to perform said excavation in a careful and prudent manner," thereby causing damage to Ameren's underground utility equipment, citing the Underground Facility Safety and Damages Prevention Act, §§ 319.010-.050, RSMo.[3]

At a bench trial, Adam Read testified that, during 2009, his construction company built three single-family residences on property it owned on Jamison Street.  Read stated that Read Homes excavated trenches in which to bury electric lines so that Ameren could feed electricity to the residences.  Read testified that home builders ordinarily dig a trench two feet short of the transformer, and then Ameren finishes digging the trench to the transformer and connects the electric line.  In this case, however, Read claimed that his company dug trenches that stopped eight to twelve feet short of the transformer due to pre-existing phone lines buried near the transformer and that Ameren dug the trenches the rest of the way and connected the electric lines to its transformer.  Read stated that all exterior construction on the Jamison Street residences, including all excavation for utilities, was complete by the fall of 2009 and that Read Homes did not excavate on the property after that.

In September 2010, Read saw an exposed electric line protruding out of the ground at the Jamison Street property and notified Ameren about it.  Ameren employee Patrick McCarty testified that he went to the property to view the damage and to assess what repair work was needed.  McCarty took photographs of the damaged utility line at that time.  Of the two

---

[2]Because Read Homes prevailed in its defense on Count I, we limit our discussion to Count II.

[3]That Act provides:  "An excavator shall serve notice of intent to excavate to the notification center . . . at least two working days, but not more than ten working days, before the expected date of commencing the excavation activity."  § 319.026.1, RSMo Cum. Supp. 2009.  At the time of the excavation in this case, the Act provided that "[t]he failure of any excavator to give notice of proposed excavation activities as required by this chapter shall be a rebuttable presumption of negligence on his part in the event that such failure shall cause injury, loss or damage." § 319.040, RSMo 2000, repealed by L.2014, H.B. no. 1867, § A, eff. Aug. 28, 2014.

photographs introduced at trial, one showed a pile of PVC conduit pipes of the type used to bury utility lines stacked near the transformer. A bucket from some type of digging equipment is partially visible in that same photograph. McCarty stated that, while Ameren did eventually bring a skid loader with a backhoe arm to the Jamison Street property to rebury the line, the equipment in the photograph did not belong to Ameren. He also testified that the exposed line was not caused by natural causes, and it was his opinion that Read Homes caused the damage because "this is the property of A.P. Read Homes under his development and direction. This is his machine at the site, so it seems it would be his responsibility [for] the damages that would have incurred on that project." Ameren introduced evidence, via McCarty, that the cost to repair that damaged utility line totaled $1,897.59.

Read testified that Read Homes did not have any reason to, and did not, excavate on the Jamison Street property after the fall of 2009; nor did it dig up or otherwise damage Ameren's utility line on the property. Read claimed that Read Homes did not have any excavation equipment at the Jamison Street property when Ameren's utility line became exposed. When specifically asked if the skid-loader bucket depicted in the photograph belonged to him, he replied, "Not that I am aware of." Read hypothesized that the utility line became exposed because Ameren dug their portion of the trench too shallow and that, over the winter months, the ground froze and thawed causing the shallow line to "frost heave" to the surface.

On January 28, 2015, the circuit court entered judgment in favor of Read Homes on Count I and in favor of Ameren on Count II. The court granted Ameren damages in the amount of $1,897.59, along with court costs, service fees, and post-judgment interest on Count II.

Read Homes filed an after-trial motion seeking reversal of the judgment on the basis that Ameren failed to prove its case or, alternatively, for the court to reopen the case to receive

additional evidence.  At arguments on the motion, counsel asked to present additional testimony from Read to refute or clarify certain evidence that was presented at trial and to "make a better record" on other issues.  The motion was overruled by operation of law on April 29, 2015.

**Point I**

Read Homes first argues that the circuit court erred in finding in favor of Ameren on Count II because there was insufficient evidence to support such a finding, "in that there was no competent evidence Read Homes excavated and/or caused any damage to Ameren's utility line."

On review of a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).  We review issues of law *de novo.  John Knox Vill. v. Fortis Const. Co., LLC*, 449 S.W.3d 68, 74 (Mo. App. 2014). Where the circuit court does not enter findings of fact or conclusions of law, as here, we consider all fact issues "as having been found in accordance with the result reached."  Rule 73.01(c).

Read Homes' argument under Point I simply reiterates the evidence and arguments that it presented at trial.  The following is representative of the entire argument:

> No one saw Adam Read excavate on the property.  No one saw an agent of Read Homes excavating on the property.  No one saw any excavation on the property. Ameren's case is exclusively circumstantial.
>
> The circumstantial evidence shows there was no excavation.  All utility lines were laid nearly a year before the exposed line was discovered.  All exterior construction on the residences had concluded in 2009.  [Thus], there was no reason for Read Homes to be excavating in 2010.
>
> . . . .
>
> Even if there was credible evidence of excavation, Ameren would still have to prove who excavated.  There was no evidence Read Homes excavated.  Ameren argues that merely because Read Homes built the Jamison Street residences, Read Homes must have caused the damage.  . . . .  Plaintiff has the burden of proving

4

what happened. Under any burden of proof or standard of review, there was no competent evidence of any excavation.

Read Homes concludes, based on these restated arguments, that there was no competent evidence to support the circuit court's ruling in favor of Ameren.

We disagree. There was competent evidence to support the court's ruling. Ameren's witness, McCarty, testified that he was a customer service specialist who had worked for Ameren for ten years. He stated that his job duties involve going to the site of a damaged line, documenting the damage, and "relay[ing]" the needed repair work onto Ameren's crews or contractors to fix the damage. He further testified:

Q. Can you describe to the Court what those photographs depict?

A. Again, that's three-inch PVC conduit. Inside of that conduit is a secondary voltage cable that's going from a ground transformer, I believe, to another pedestal, which splits off to serve two houses.

Q. Okay. Was that particular conduit and line installed by A.P. Read Homes several months previously?

A. Yes. Ameren provided the conduit for A.P. Read Homes to install.

Q. Okay. Based on your experience, especially dealing--from examining and investigating damages such as this, can you tell the Court how this pipe--how this line would have been exposed out of the ground?

A. The line is exposed. As you can see a picture of a Bobcat bucket in there, so there's been excavation, and then it looks like run over which the tire tracks seem to indicate running over the pipe.

Q. Could this damage have been caused by natural causes?

A. No.

Q. And is it Ameren's position that A.P. Read Homes caused this particular damage?

A. Yes.

5

Q. Okay. And what's the basis for that belief?

A. Once again, this is the property of A.P. Read Homes under his development and direction. This is his machine at the site, so it seems it would be his responsibility and the damages that would have incurred on that project.

When considering a challenge based on the sufficiency of the evidence, we accept all evidence and inferences favorable to the judgment as true, and we disregard all contrary evidence and inferences. *John Knox Vill.*, 449 S.W.3d at 74. "We defer to the circuit court's determination as to the credibility of witnesses and recognize that the court was free to believe or disbelieve all, part, or none of the testimony of any witness." *Id*. Here, the circuit court was presented with conflicting evidence as to which party was the owner of the bobcat or skid-loader in the photograph and conflicting evidence as to which party was responsible for the excavation and damage to the line. The court was free to, and evidently did, find that McCarty's testimony was more credible than Read's.

Read Homes complains that Ameren's only evidence was circumstantial, but a plaintiff may prove his case by circumstantial evidence where, as here, "the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred." *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 470 (Mo. App. 2013). While mere speculation or conjecture is not sufficient evidence to prove causation, the law does not require direct proof, and the plaintiff may prove causation by "reasonable inferences from proven fact or by circumstantial evidence." *Sw. Bell Tel. Co. v. Ahrens Contracting, Inc.*, 366 S.W.3d 602, 608 (Mo. App. 2012) (citation omitted) (held that substantial circumstantial evidence existed to support finding that subcontractor damaged telephone provider's underground cable, in negligence action brought pursuant to the Underground Facility Safety and Damage Prevention Act).

6

Deferring to the circuit court's resolution of conflicting evidence and its assessment of witness credibility, we find that the judgment was supported by substantial evidence, and, thus, the circuit court did not err in ruling in favor of Ameren on this claim. The point is denied.

**Point II**

Read Homes also contends that the circuit court erred in overruling its motion for new trial "because that part of said motion requesting [that] additional evidence be received should have been sustained, in that the proffered additional evidence was critically material to the merits of Read Homes' defense and there was no prejudice to Ameren."

Read Homes specifically contests the circuit court's denial of its request to reopen the evidence to receive additional testimony from Read. Under Rule 78.01, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment." A circuit court has wide discretion in deciding whether to grant a motion to reopen a case for the admission of additional evidence. *City of Riverside v. Progressive Inv. Club of Kansas City, Inc.*, 45 S.W.3d 905, 910 (Mo. App. 2001). Absent an abuse of discretion, this Court will not interfere with a trial court's decision to reject such a motion. *Forney v. Mo. Bridge & Concrete, Inc.*, 112 S.W.3d 471, 475 (Mo. App. 2003).

Here, Read Homes sought to introduce additional testimony from Read, first, to show that he did not own the PVC conduit pipe that was piled up at the base of the transformer. Read Homes asserts that this testimony would have established that the pipes were the same type that Ameren would use to fix a broken line and, thus, the conduit obviously belonged to Ameren. Read Homes contends that this evidence was important because:

7

[It] supports Read Homes' position that the photographs were taken at the same time Ameren was repairing the line and had their materials and equipment on site for repairs. That evidence would strongly support Read Homes' position that the excavator depicted in [the photograph] belonged to Ameren and not Read Homes.

Read Homes also sought to introduce additional testimony from Read to establish that electric service was never interrupted at the Jamison Street residence. This, Read proposes, proves that he had no ulterior motive for reporting the exposed line because "if Read Homes excavated and dug up the line, it could have just reburied the whole line [without reporting it] and no one would have known, since there was never an interruption in service." Finally, Read Homes wished to present additional testimony from Read "to make a better record" on certain specific issues, such as "the condition of the back portion of the lot where the ground was bare."

Read Homes cites *Metro Insurance Agency v. Mannino*, for the proposition that, when there is no inconvenience to the court, nor unfair advantage to the offering party, it is an abuse of discretion to refuse to reopen the case for additional evidence that might substantially affect the merits of the case. 856 S.W.2d 81, 83 (Mo. App. 1993). Read Homes contends that the additional testimony it sought to introduce "was critically material to the merits of the case" and would not have caused "any material inconvenience to the Court or Ameren," nor "any unfairness to Ameren," and, thus, its motion to reopen the evidence and take additional testimony should have been sustained.

We disagree. In *Forney*, this Court rejected a similar argument on the basis that "Forney had ample opportunity during trial" to present the evidence that he sought to present in his after-trial motion and "did not ask the trial court to reopen the evidence until after the court entered its judgment concluding that no probative evidence was produced" on the issue in question. 112 S.W.3d at 475-76. This Court explained that "[c]ourts cannot reopen cases merely because a

8

party has had a change of heart regarding the importance of evidence it chose not to introduce when it first had the opportunity to do so." *Id.*

The same is true here. Read Homes does not claim that this additional evidence should have been admitted because it was "newly discovered evidence," as discussed by this Court in *Hall v. Utley*, 443 S.W.3d 696, 701-02 (Mo. App. 2014). Rather, as was the case in *Forney*, Read Homes merely sought to present evidence that could have, and should have, been presented at trial. *See* 112 S.W.3d at 475. Thus, we find no abuse of discretion in the circuit court's rejection of the request to introduce additional evidence, and we decline to interfere with the court's denial of the motion for new trial. This point also is denied.

## Conclusion

Based on the foregoing, we affirm the circuit court's judgment of liability against Read Homes as to Count II and its denial of Read Homes' after-trial motion.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.