**Donna DUNN, Respondent,**

**v.**

**Tiffiny BAKER, Appellant.**

**ED 105336**

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: November 21, 2017

Paul T. Krispin, Jr., 1010 Market Street, Suite 1500, St. Louis, MO 63101, for appellant.

Christopher W. Basler, 1420 Strassner Drive, St. Louis, MO 63144, for respondent.

Gary M. Gaertner, Jr., Presiding Judge

## Introduction

Tiffiny Baker (Baker) appeals the judgment of the trial court on Donna Dunn's (Dunn) petition to recover unpaid rent and possession of a premises owned by Dunn. Baker argues that the lease at issue between Dunn and Baker was ambiguous and the trial court erred in granting relief to Dunn. We affirm.

## Background

On March 2, 2016, Baker and Dunn entered into a commercial lease agreement for premises owned by Dunn, described in the lease as "3000 Wyoming Ave." Baker rented the property for her salon business, which was located on the first floor of the building. There was a unit upstairs in the building as well, and the parties dispute whether the lease included the upstairs unit. The parties refer to the upstairs unit as "3000A Wyoming."

On November 16, 2016, Dunn filed a petition for rent and possession of 3000A Wyoming, alleging that Baker owed $2,000 in past due rent. Baker filed a response arguing that 3000A Wyoming was included in the commercial lease she signed, and Baker was current in her payments under the lease.

The trial court held a hearing on January 12, 2017, and the parties presented the following evidence. Dunn described the property at issue as a mixed-use building: the downstairs is commercial space, and the upstairs unit is residential. She testified that for sale purposes, the entire building is referred to as 3000 Wyoming, but there are two separate units, and she had rented them separately in the past. Dunn testified that the lease signed was titled a "commercial lease" and concerned only the downstairs commercial space, for an amount of $500 per month. Dunn testified that she and Baker talked about Baker also utilizing the upstairs residential space, but they agreed it was not ready for occupancy because it needed some work. Specifically, Dunn had to put in a kitchen and make bathroom improvements. Dunn testified that they orally agreed Dunn would perform the necessary work to make the space livable, and then Baker would begin paying additional rent of $500 monthly to occupy the upstairs unit as well. Dunn testified Baker also agreed she would be responsible for painting in the upstairs unit.

Dunn presented receipts for work performed on the upstairs unit in May and June of 2016. Dunn testified that she found out on the first weekend in July that Baker had moved into the upstairs unit. At that point the space was almost ready and had been painted, but Dunn had not yet

told Baker she could move in. Baker discovered some gas leaks in the unit and had them repaired, and Dunn and Baker agreed to split the cost of those repairs, which was $300 each. Baker then gave Dunn an additional $700, which Dunn took as payment of $500 for the downstairs unit and $200 for the first month's rent of the upstairs unit. Dunn presented emails in which Baker said she assumed that her payment toward the gas repairs would be credited as rent. Baker's email also stated, "It was my understanding that you would get the second floor livable, I would paint, then pay rent." Dunn also presented an email from Baker saying she was told by her attorney that she needs "a lease for upstairs or a revised lease detailing the expectations & requirements for both parties ... There is no problem with money, but I was advised to have everything signed prior to the rent for upstairs." Dunn testified she had not received payment for the upstairs unit since July of 2016.

Baker testified that her understanding at the time she entered the commercial lease was that it included the entire building at 3000 Wyoming. Besides the lease, Baker offered into evidence a draft of a sales contract for Baker's potential purchase of the entire building, prepared by Dunn at the same time Dunn prepared the commercial lease. Baker did not sign the sales contract at that time, but the contract described the entire building as "3000 Wyoming Ave," the same as the description of the building on the lease. Baker testified that she believed she was leasing the whole building and "doing a rehab at the same time." She said when she signed the lease, she was given keys to the whole building. Baker testified at that time, there was no separate address designation for the upstairs and downstairs units, and her salon clients were often confused as to which door was the entrance to the salon space. Baker said that she labeled the door to the upstairs "3000A" to avoid confusion.

Baker presented invoices from her contractor showing work she paid for on both units in May of 2016. She testified that she was doing work on the upstairs unit and Dunn and her husband were aware of it. Regarding the $300 she spent on gas repairs, Baker testified that she paid the additional $700 that month in order to get one month ahead on rent, not as an additional $500 for the upstairs unit. Baker testified that she requested a new lease in her emails because she did not understand how she could be paying for repairs and also need to pay for rent. Baker testified that her email discussing paying rent after painting was because Dunn wanted "a little bit more" for rent, but the whole time Baker was renting the entire building. She testified that from the beginning of her lease, she had used the upstairs unit for storage. She said was willing to pay more in rent once the upstairs became livable, but that she and Dunn never reached an agreement.

The trial court found Baker's testimony regarding the extra rent she paid in July not to be credible. The trial court found Dunn's testimony that the parties entered an oral agreement that Baker would lease the upstairs unit for $500 per month to be credible. The trial court found that this oral agreement was separate from the written commercial lease. The trial court found that Baker failed to pay rent for the upstairs unit for the months of August 2016 through January of 2017, resulting in $3,000 that Baker owed to Dunn in back rent. The trial court found Baker's testimony credible that any repairs she made to the upstairs unit would be credited as rent. Based on the evidence presented, the trial court credited $1,103.31 to Baker, leaving $1,896.69 due in back rent. The

trial court also granted Dunn possession of the upstairs unit. This appeal follows.

## Standard of Review

We review a court-tried case according to the principles set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We defer to the trial court's credibility determinations and view the evidence in the light most favorable to the trial court's judgment. Neal v. Neal, 281 S.W.3d 330, 337 (Mo. App. E.D. 2009). Whether a contract is ambiguous is a question of law we review de novo. ATC Co., Inc. v. Myatt, 389 S.W.3d 732, 735 (Mo. App. E.D. 2013).

## Discussion

On appeal, Baker argues the trial court erroneously applied the law in two ways. In Point I, Baker argues that the commercial lease was ambiguous, and the trial court failed to consider extrinsic evidence demonstrating that the parties understood the term "3000 Wyoming Ave" in the lease to refer to the entire building. Baker alternatively argues the trial court failed to resolve the ambiguity against the drafter, Dunn. In Point II, Baker argues that if the trial court correctly found the lease did not include the upstairs unit, then it erred because there was no agreement between the parties for the upstairs unit and the evidence was insufficient to establish an enforceable oral lease agreement that did not violate the Statute of Frauds. We discuss each in turn.

## Point I

In order to grant judgment in favor of Dunn, the trial court had to find that Baker failed to pay rent and that Dunn made a demand for rent. Stough v. Bregg, 506 S.W.3d 400, 405 (Mo. App. E.D. 2016). The threshold issue is whether Baker had an obligation to pay rent under the commercial lease agreement or any oral agreement. Baker first argues the commercial lease was ambiguous, and extrinsic evidence established it applied to the entire building, or alternatively the lease should be construed against Dunn as the drafter. We disagree.

We follow the rules of contract construction when interpreting lease agreements. BMJ Partners v. King's Beauty Distributor Co., 508 S.W.3d 175, 179 (Mo. App. E.D. 2016). "We first examine the plain language of the agreement to determine whether it clearly addresses the issue at hand." Brittany Sobery Family Ltd. P'ship v. Coinmach Corp., 392 S.W.3d 46, 50 (Mo. App. E.D. 2013). If it does, the inquiry ends. Id. "Language is considered unclear, or ambiguous, if it is reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." Id. If we find the language to be ambiguous, we look at the entire context of the contract as well as parol evidence to determine the intent of the parties. Id. We will only resolve an ambiguity against the drafter if there is no evidence of the parties' intent. ATC Co., 389 S.W.3d at 736.

Here, the contract contains a latent ambiguity. In contrast to a patent ambiguity, which is clear from the face of the contract, a latent ambiguity arises "by reason of collateral matters and/or external circumstances which render otherwise clear language in a contract uncertain," Smith v. Taylor-Morley, Inc., 929 S.W.2d 918, 923 (Mo. App. E.D. 1996). In the commercial lease here, the address "3000 Wyoming Ave" itself is not ambiguous, but given the makeup of the building, which

undisputedly contains two units, referred to separately as "3000 Wyoming" and "3000A Wyoming", and sometimes collectively as "3000 Wyoming," the commercial lease is unclear regarding whether it refers to the whole building or solely the downstairs unit. Thus, the trial court appropriately considered extrinsic evidence to determine the intent of the parties, including "the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." Royal Banks of Mo. v. Fridkin, 819 S.W.2d 359, 362 (Mo. banc 1991).

■ The trial court's determination here that the commercial lease contract included only the downstairs unit was supported by substantial evidence. Dunn testified that the building is divided into two units, the downstairs as commercial space and the upstairs as residential space. The lease between the parties states that it is a "commercial lease." Baker's emails to Dunn indicate that she believed she would separately rent the upstairs property. She wrote that her understanding of their agreement was that Dunn would make improvements, "I would paint, then pay rent." Baker also requested "a lease for upstairs or a revised lease." She testified that she was willing to pay more for the upstairs unit even though she believed the lease covered both units. Baker paid $500 extra in rent for July, made up of $300 for repairs of gas leaks and $200 extra along with her $500 in rent for the downstairs. The trial court found Baker's claim that she paid this extra amount in order to get one month ahead on rent for the whole building was not credible, to which we must defer. Thus, the trial court did not err in finding that the parties' intent was that the commercial lease did not include the upstairs unit. Point denied.

## Point II

■ Baker argues that if the commercial lease did not include the upstairs unit, then she owed no back rent for the unit. While the trial court found a separate oral agreement applied to the upstairs unit, Baker argues the trial court erroneously applied the law in that there was insufficient evidence to find an oral agreement that did not violate the Statute of Frauds, We disagree.

Here, the parties offered no evidence regarding the time period of any lease for the upstairs unit.[1] The Statute of Frauds requires that leases for longer than a term of one year must be in writing. Section 432.010, RSMo. (2000).[2] However, this does not preclude the possibility of an enforceable oral lease. Section 432.050 provides that leases that are not in writing "shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force." Additionally, Section 441.060.3 provides that unwritten leases for living space "shall be held and taken to be tenancies from month to month."

---

1. Baker argues that the intended time period would logically be the same time period contemplated by the commercial lease, which was for two years. However, neither party offered any testimony regarding their intentions for the time period of the upstairs lease.

Baker presumably did not do so because she maintained throughout that no separate lease for the upstairs unit existed.

2. All statutory references are to RSMo. (2000) unless otherwise indicated.

Thus, while an oral lease for a term of longer than one year is not enforceable, we may find that an oral lease agreement creates a tenancy at will. See Kroeger v. Bohrer, 91 S.W. 159, 160 (Mo. App. 1905) (noting statutes relating to "verbal leases ... declared by the statute of frauds to be tenancies at will only"). Section 441.060.3 specifies that such tenancy is on a month-to-month basis. See Schnucks Carrollton Corp. v. Bridgeton Health & Fitness Inc., 884 S.W.2d 733, 738-39 (Mo. App. E.D. 1994) (landlord's consent to tenant's occupancy creates month-to-month tenancy without requirement of writing). The trial court's finding of an oral lease between the parties here does not erroneously declare or apply the law. The applicable law operates to render any oral agreement a month-to-month tenancy.

Based on the evidence presented, the trial court concluded the lease consisted of the following terms: Baker would pay $500 per month for the upstairs unit, the lease would begin when work was completed in the unit, and any money Baker spent on repairs would be credited as rent. These findings are supported by substantial evidence in the record. The trial court found Dunn's testimony regarding an agreement to rent the upstairs unit for $500 per month was credible. Dunn's testimony, as well as the fact that Baker paid an extra $500 in July of 2016 through a combination of repairs and direct payment, support this conclusion. The trial court specifically found Baker's testimony that she paid additional rent in July in order to be one month ahead on the commercial lease was not credible. The dispute between the parties began in July, after which Baker failed to pay any additional rent for the upstairs unit.

Baker argues that a letter from Dunn in October of 2016 contradicts Dunn's argument that an oral lease existed. In it, Dunn tells Baker, "You have taken possession of the residential portion of the building without my permission or written consent which is not part of your commercial lease agreement, which means you are squatting." Baker argues this shows Dunn did not believe a lease, oral or otherwise, existed for the upstairs unit, However, the trial court could have found substantial evidence of an oral agreement from the parties' prior emails and the parties' testimony at trial. The trial court could reasonably have found that this email, coming months after Dunn's demands for payment of rent, was either a termination of the oral lease or simply a strategy to regain possession at that point, rather than a statement that no oral lease existed. Further, the email accurately reflected Dunn's belief that the upstairs unit was not part of the commercial lease. The trial court's findings regarding the parties' agreement are not against the weight of the evidence. Point denied.

### Conclusion

The trial court's judgment was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare or apply the law. We affirm.

Robert M. Clayton III, J., concurs.

Angela T. Quigless, J., concurs.