

# In the Missouri Court of Appeals
## Western District

BAKER TEAM PROPERTIES, LLC.,    )
                  Respondent,  )
v.                         )        WD83045
                          )
MATT WENTA,             )        FILED: October 20, 2020
                  Appellant.  )

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE STEPHANIE M. MORRELL, JUDGE

### BEFORE DIVISION THREE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

Matt Wenta appeals from the circuit court's judgment against him and in favor of Baker Team Properties, LLC ("Baker Team") on Baker Team's claim for breach of a lease and on his counterclaim asserting violations of the Missouri Merchandising Practices Act ("MMPA"). Wenta contends that the judgment was against the weight of the evidence. He also argues that the court erred in denying his motion to take additional evidence after trial. For reasons explained herein, we affirm the judgment, grant Baker Team's motion for attorney fees on appeal, and remand the case for further proceedings in accordance with this opinion.

**FACTUAL AND PROCEDURAL HISTORY**

In June 2017, Baker Team, a property management company, and Wenta entered into a lease agreement for property located at 903 Manhattan Drive in Columbia. The term of the lease was from August 1, 2017, to July 27, 2018. The rent was $435 per month, and the lease provided for a late payment charge of $5 per day. Two other men occupied the property at the same time as Wenta. All three men had separate leases.

On April 6, 2018, Baker Team's owner and manager, Angie Baker, sent a text to Wenta saying that she was getting ready to send out lease renewals. She asked if Wenta wanted to come to the office to sign a lease renewal or if he wanted her to email the renewal to him. Wenta responded, "Email would be great."

To handle a lease renewal by email, Baker uses DocuSign, a subscription-based website that allows her to have her tenants electronically sign documents. Wenta electronically signed the lease renewal via DocuSign on May 2, 2018. Later, Baker downloaded Wenta's electronically-signed renewal to Baker Team's computer system and printed a copy of the renewal. Baker then moved Wenta's renewal file from Baker Team's DocuSign inbox folder to another DocuSign folder to make it easier to review items in her inbox, as she has many renewals sent to her by tenants.

When Baker moved Wenta's renewal file from her inbox to another folder on DocuSign on May 19, 2018, DocuSign sent an automated email to Wenta saying,

2

"Angie Baker voided Please DocuSign:  903 Manhattan Matt lease renewal.doc."

The email also stated:

> Please DocuSign:  903 Manhattan Matt lease renewal.doc has been voided for the following reason:
> Envelope has been deleted and was therefore automatically voided.

According to Baker, the meaning of the "void" email is explained in the "Help" section of the DocuSign website, and there was a link to the website that Wenta could have clicked on to access this information.  In Baker's experience working with DocuSign, when she moves a file from her inbox to the storage folder on DocuSign, DocuSign generates an automated message stating that the transaction is "void," which means only that no further signature activity can take place for that transaction.  It does not remove the signed document from the DocuSign system.  Wenta's signed renewal continued to be viewable on DocuSign.

On June 19, 2018, one month after Wenta received the "void" email, Wenta forwarded the "void" email to Baker and said, "Just curious as to why was this voided or if this was an email I was not supposed to receive."  Six minutes later, Baker responded to Wenta, "I'll check tomorrow but you signed a different one."  By this response, Baker meant that she had paper and electronic copies of Wenta's signed renewal.  The next day, Baker took a picture with her phone of the paper copy of Wenta's signed renewal and sent it by text message to Wenta, explaining that it was the renewal he had signed, that he was "good to go," and that his renewal was "fine."

Wenta paid the $435 rent for August 2018. He did not mention the "void" email again until he sent an email to Baker on August 29, 2018, informing her that he was moving out of the property on August 31, 2018. In his email, he stated, in pertinent part, "As you know my lease . . . expired on July 27th and I'm paid in full through August." He continued:

> Since my lease has expired, you voided the renewal notice on May 19, we never established a written agreement to extend the Lease, and you are now renting the house to two individuals, . . . I will be moving out of the premises at the end of the month this Friday, August 31st.

In response, Baker sent him an email stating, "I sent you a text of the renewal you signed. You can move out, but you are still responsible for rent every month until July 2019. Let me know what you are doing." Wenta responded by email, again asserting that the May 19 "void" email voided his signed lease renewal. Wenta also asserted, among other things, that the lease required that both parties execute the renewal agreement, and that both parties had not. Wenta told Baker that he would call her later that afternoon to "resolve any misunderstandings," but he never called.

Instead, Baker had an email exchange with Wenta's father, in which Wenta's father asserted that Wenta's original lease expired on July 27, 2018, Wenta continued on as a month-to-month tenant in August 2018, and the parties did not sign a written agreement to renew or extend the original lease. Baker informed Wenta's father that Wenta renewed the lease for another year "when he signed that

4

document on May 2nd." Wenta moved out of the property on August 31, 2018, and returned the keys for the property to Baker Team's office.

Baker Team filed a petition for breach of a lease against Wenta on September 27, 2018. In its petition, Baker Team asserted that Wenta's lease did not expire until July 27, 2019, and that he was liable for rent through the termination of the lease on that date. Baker Team requested unpaid rent of $435 per month, late payment charges of $5 per day, a premises damage/carpet cleaning fee of $50, and reasonable attorney fees. In his answer, Wenta alleged that the lease ended on July 27, 2018, and denied that he and Baker Team had extended or renewed the lease. Wenta asserted counterclaims for failure to return his security deposit and for violations of the MMPA.[1]

A bench trial was held, during which Baker and Wenta testified. The court entered judgment on June 5, 2019, in favor of Baker Team on its claim and on Wenta's counterclaims. The court ordered Wenta to pay past-due rent through June 2019 of $4,785; late payment charges through June 3, 2019, of $1,380; carpet cleaning charges of $50; attorney fees of $2,315; and court costs of $107, for a subtotal of $8,637. After the court credited Wenta $435 for his security deposit, the net total judgment against Wenta was $8,202. Wenta filed a motion for new trial and to open the judgment and take additional evidence, which the court denied. Wenta appeals.

---

[1] Wenta asserted the failure to return his security deposit as both a separate claim and as an "unfair practice" in his claim alleging violations of the MMPA.

**STANDARD OF REVIEW**

In this bench-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In his first two points, Wenta contends the judgment was against the weight of the evidence. "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014). An against-the-weight-of-the-evidence claim "presupposes that there is sufficient evidence to support the judgment." *Id.* (citation omitted). Thus, in reviewing such a claim, we will reverse on appeal "only in rare cases," when we have "a firm belief that the decree or judgment is wrong." *Id.* at 206. "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Id.*

In reviewing the record in an against-the-weight-of-the-evidence challenge, we defer "to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." *Id.* We defer to the circuit court's credibility determinations because it "is in a better position to weigh the contested and conflicting evidence in

6

the context of the whole case" and to judge the demeanor, sincerity, and character of the witnesses. *Id*. We recognize "that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact," and we "will not re-find facts based on credibility determinations through [our] own perspective." *Id*. Evidence contrary to the circuit court's judgment that is not based on a credibility determination can be considered in reviewing an against-the-weight-of-the-evidence challenge. *Id*.

In his third point, Wenta alleges the court erred in denying his motion for new trial and to open the judgment to take additional evidence. "A circuit court has wide discretion in deciding whether to grant a motion to reopen a case for the admission of additional evidence," and we will not interfere with that decision unless we find an abuse of discretion. *Union Elec. Co. v. A.P. Read Homes, LLC*, 485 S.W.3d 773, 778 (Mo. App. 2016). An abuse of discretion occurs only "when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration." *Beverly v. Hudak*, 545 S.W.3d 864, 869 (Mo. App. 2018).

## ANALYSIS

In Point I, Wenta contends the circuit court erred in entering judgment in favor of Baker Team on its claim for breach of lease. He argues that the judgment was against the weight of the evidence because the lease terminated on July 27,

2018, was not renewed in accordance with its terms and, as a result, became a month-to-month lease after that time.

We interpret the language of a lease *de novo*. *Brittany Sobery Family Ltd. P'ship v. Coinmach Corp.*, 392 S.W.3d 46, 50 (Mo. App. 2013). "When interpreting lease agreements, we follow the rules of construction governing contract[s]." *Id*. If the plain language of the agreement is clear, unambiguous, and addresses the matter in dispute, that language controls, and the inquiry ends. *Id*.

The language of the lease in this case provided that its termination date was July 27, 2018. Paragraph 30 of the lease stated:

> Absent lessor's execution of a new lease with lessee or the parties' written agreement to renew or extend this lease, this lease shall expire on the termination date stated in paragraph 5, and lessee shall vacate the premises on the termination date. If lessee retains possession of the premises beyond the termination date <u>and</u> lessor thereafter accepts rent for any period after the termination date, this lease shall continue on the same terms and conditions, but the term shall be month-to-month.

Under the plain language of paragraph 30, if Wenta wished to remain on the property after July 27, 2018, he had three options: (1) execute a new lease with Baker Team; (2) enter into a written agreement with Baker Team to renew or extend the lease; or (3) retain possession after the termination date, continue to pay rent and, if Baker Team accepted the rent, become a month-to-month tenant. Baker Team offered Wenta option (2) when it presented him with a lease renewal agreement for his signature in May 2018. The lease renewal agreement informed Wenta that his lease was up for renewal on July 27, 2018, and that the monthly rent

would stay at $435. The form then instructed Wenta to check the appropriate box beside the statements, "I WILL renew the lease for 903 Manhattan Dr through July 27, 2019," or "I WILL NOT renew and my lease will expire July 27, 2018." The form further instructed Wenta to sign on the designated line. Wenta checked that he would renew the lease through July 27, 2019, and he electronically signed the form.

Wenta argues that the lease renewal agreement was insufficient to constitute a "written agreement" to renew the lease because Baker Team did not sign it. "Whether an unsigned writing constitutes a binding contract usually depends on the intention of the parties." *Sanders v. Dewitt*, 579 S.W.2d 707, 711 (Mo. App. 1979). "The object of a signature is to show mutuality or assent which may be shown in other ways as, for example, by acts or conduct of the parties." *Id*. "Whether a party has accepted the terms of a contract in the absence of a signature is thus a question of fact." *Baier v. Darden Rests*., 420 S.W.3d 733, 738 (Mo. App. 2014).

Baker testified that her lease renewal agreements do not contain a signature line for the company. She testified that the agreements do not require the company's signature because, "[i]f we send a lease renewal out, we are agreeing to renew the lease as the company." The circuit court was free to accept Baker's testimony as to Baker Team's intent, and we defer to its decision to do so. *See id*. at 739. Thus, no signature from a representative of Baker Team was required, as Baker Team's assent to renewal of the lease was shown by Baker's conduct in sending the renewal agreement to Wenta and asking him to sign it after Wenta

9

responded affirmatively to Baker's inquiry as to whether he wanted to renew the lease.

Wenta asserts that a provision in paragraph 42(c) of the lease stating that "no modification of this lease shall be binding unless evidenced by an agreement in writing signed by lessor and lessee" required that the lease renewal be signed by both parties. This provision has no relevance to this dispute because it concerns a modification of the lease. The plain and ordinary meaning of the word "modification" is "the making of a limited change in something." *Modification*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/modification (last visited October 14, 2020). The renewal agreement did not change the terms and conditions of the lease[2]; instead, it simply renewed the same lease for another year. The court's implicit finding that the lease renewal electronically signed by Wenta on May 2, 2018, constituted a valid written agreement to renew the lease pursuant to the lease's terms was not against the weight of the evidence.

Wenta contends, however, that the weight of the evidence established that Baker Team subsequently voided the renewal agreement on May 19, 2018, when DocuSign sent him the "void" email. It is true that Wenta received an email stating,

---

[2] Because the renewal option in paragraph 30 did not specify the terms and conditions of renewal, "a renewal 'on the same terms and conditions is imported and implied.'" *K.C. Air Cargo Servs., Inc. v. City of Kansas City*, 523 S.W.3d 1, 7 n.4 (Mo. App. 2017) (quoting *Davison v. Rodes*, 299 S.W.2d 591, 595 (Mo. App. 1956)).

"Angie Baker voided Please DocuSign: 903 Manhattan Matt lease renewal.doc,"

and:

> Please DocuSign: 903 Manhattan Matt lease renewal.doc has been
> voided for the following reason:
> Envelope has been deleted and was therefore automatically voided.

Baker testified, however, that the "void" email was automatically generated by DocuSign in response to her moving Wenta's file to a different folder and that Baker Team had not voided Wenta's renewal. Indeed, Baker testified that, when Wenta inquired about the meaning of the "void" email in June 2018, she responded to him by sending him a picture of the paper copy of his signed renewal and explaining to him that he was "good to go" and that his renewal was "fine." The court chose to accept Baker's testimony that Baker Team did not void Wenta's renewal and that Baker promptly told Wenta that his renewal remained valid. Again, we defer to the court's credibility determination on this issue.

Pursuant to the valid renewal agreement, Wenta was liable for rent on the property through July 27, 2019. He paid rent only through August 2018. Therefore, the court's judgment finding in favor of Baker Team on its breach of lease claim and awarding Baker Team damages in the amount of $8,202 for past-due rent, late payment charges, carpet cleaning charges, attorney fees, and court costs, less Wenta's security deposit, was not against the weight of the evidence. Point I is denied.

In Point II, Wenta contends the court erred in entering judgment against him on his counterclaim for violations of the MMPA. He argues that the judgment was against the weight of the evidence because Baker Team made a misrepresentation to him about the "void" email and that Baker Team failed to return his security deposit in violation of Section 535.300, RSMo 2016,[3] which he also alleges was an "unfair practice" in violation of Section 407.020, RSMo Supp. 2017.

With regard to his misrepresentation claim, Wenta asserts that, in response to his inquiry into the meaning of the "void" email, Baker's initial statement to him that he "signed a different one" was a misrepresentation because there was only one lease renewal. In her testimony, Baker explained that what she meant by this statement was that she had paper and electronic copies of Wenta's signed renewal. While Baker's statement to Wenta that he "signed a different one" may have been inartfully worded, it was not a misrepresentation. Despite DocuSign's "void" email, Wenta's signed renewal was still in existence, and Baker communicated that fact to Wenta the next day by sending him a picture of a paper copy of his signed renewal and assuring him that his renewal was "fine." The court's judgment denying Wenta's MMPA claim based upon an alleged misrepresentation was not against the weight of the evidence.

Moreover, because the termination date of Wenta's renewed lease was July 27, 2019, Baker Team did not violate Section 535.300.3's requirement that it return

[3] All statutory references are to the Revised Statutes of Missouri 2016, unless otherwise indicated.

the full amount of the security deposit to Wenta or furnish an itemized list of the damages for which any portion of the security deposit was withheld within 30 days after the termination date of the tenancy.  Therefore, the court's judgment denying Wenta's MMPA claim based upon an alleged violation of Section 535.300 was not against the weight of the evidence.  Point II is denied.

In Point III, Wenta contends the circuit court abused its discretion in denying his motion for a new trial and to open the judgment to take additional evidence.  He argues that the additional evidence concerns the meaning of DocuSign's "void" email and, therefore, was material and "might substantially affect the merits of the case."

Rule 78.01 provides that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment."  In his motion, Wenta sought to present additional evidence that he found upon reviewing DocuSign's website and the DocuSign User Guide concerning the "voiding" of an "envelope/agreement."  Specifically, Wenta wanted to present evidence that, "if the DocuSign User who sent the envelope/agreement thereafter deletes the envelope/agreement, DocuSign explicitly states that 'Deleting an envelope that you sent cancels any outstanding signing activities and voids the transaction.'"  Based upon this language, Wenta argued that, "DocuSign clearly states that once a transaction is 'Voided,' the transaction is terminated and cannot be reinstated."  Wenta asserts that this additional evidence

13

was material and would have substantially affected the merits of this case, and its presentation would not have inconvenienced the court; therefore, the court should have sustained his motion to take additional evidence. We disagree.

Wenta does not claim that this evidence should have been admitted because it was "newly discovered evidence." Indeed, he does not assert that this evidence was unavailable to him before the court entered its judgment, and he offers no explanation for why he did not present this evidence at trial. Instead, like the movants in *Union Electric Company* and *Forney v. Missouri Bridge and Concrete, Inc.*, 112 S.W.3d 471, 475 (Mo. App. 2003), Wenta appears to be seeking "to present evidence that could have, and should have, been presented at trial." *Union Elec. Co.*, 485 S.W.3d at 779. "Courts cannot reopen cases merely because a party has had a change of heart regarding the importance of evidence it chose not to introduce when it first had the opportunity to do so." *Forney*, 112 S.W.3d at 475-76 (citation omitted). The court did not abuse its discretion in denying Wenta's motion for a new trial and to open the judgment to take additional evidence. Point III is denied.

Baker Team filed a motion for an award of attorney fees on appeal, which we have taken with the case. "We may award attorney's fees on appeal if they are authorized by the written agreement that is the subject of the issues on appeal." *Rx Recalls, Inc. v. Devos Ltd.*, 317 S.W.3d 95, 96-97 (Mo. App. 2010). Under the terms of the lease, Baker Team is entitled to an award of attorney fees. While we "have the authority to allow and fix the amount of attorney's fees on appeal, we exercise

14

this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Dumler v. Nationstar Mortg.*, LLC, 585 S.W.3d 343, 354 (Mo. App. 2019) (citation omitted). Therefore, we remand the case to the circuit court to conduct a hearing to determine the amount of Baker Team's reasonable attorney fees on appeal and to enter judgment accordingly.

## CONCLUSION

The judgment is affirmed. Baker Team's motion for an award of attorney fees on appeal is granted, and the case is remanded for further proceedings in accordance with this opinion.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

15