

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

KEYSTONE HOSPITALITY, LLC, )
)
       Appellant, ) **WD86455**
)
v. ) **OPINION FILED:**
)
CAPITOL FOOD GROUP, LLC; ) **September 17, 2024**
DARIN S. FRANTZ; AND )
KRISTINA M. FRANTZ, )
)
       Respondents. )
)

**Appeal from the Circuit Court of Johnson County, Missouri**
**Honorable Brent F. Teichman, Judge**

**Before Division Two: W. Douglas Thomson, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Keystone Hospitality, LLC (Keystone) appeals from a judgment of the Circuit Court of

Johnson County, Missouri (trial court) entered after a bench trial. Keystone filed suit for breach

of a lease agreement by Capitol, and for breach of personal guaranties of the lease agreement by

Darin Frantz and Kristina Frantz. The trial court entered judgment in favor of Capitol Food

Group, LLC (Capitol), Darin Frantz, and Kristina Frantz, and against Keystone. In two points on

appeal, Keystone argues that (1) the trial court's finding and judgment that Capitol did not

breach the lease was against the weight of the evidence; and (2) that the trial court's finding and

judgment that Keystone anticipatorily breached the lease by repudiation was against the weight of the evidence. We affirm.

### Factual and Procedural Background

Keystone is a Missouri limited liability company conducting business in Missouri. Jerry W. Franklin (Franklin) is the Chairman and CEO of J.W. Franklin Co., which is the sole member of Keystone. Capitol Food Group, LLC (Capitol) is an Oklahoma limited liability company that conducts business in Missouri. It is a Schlotzsky's franchisee. Darin Frantz and Kristina Frantz are the married owners and operators of Capitol. The Frantzes built their first Schlotzsky's in Branson, Missouri in 2018. The franchisor of Schlotzsky's is Focus Brands.

On July 10, 2019, Keystone, as landlord, and Capitol, as tenant, entered into an absolute net lease agreement (the lease) for property located in Warrensburg, Missouri. The lease was for a build-to-suit Schlotzsky's restaurant. Darin and Kristina Frantz each signed personal guaranties of the lease's obligations. Keystone and its attorneys drafted and prepared the lease and guaranties.

Pursuant to Section 4.1 of the lease, the commencement date would be the date upon which "the Improvements [to the property] are substantially complete, Furniture, Fixtures, and Equipment is installed and a Temporary Occupancy Certificate or similar document is issued."

Exhibit D of the lease, captioned "Furniture, Fixtures and Equipment Schedule," stated that Capitol would provide Keystone a list of the furniture, fixtures and equipment (FF&E) that Capitol wanted Keystone to purchase. Exhibit D provided that Keystone would pay for $300,000 of the project's FF&E, excluding signage. Exhibit D stated in its entirety:

> Tenant shall provide Landlord a list of the FF&E described in the Lease for installation by Landlord or its agents. As set forth in Section 3.3 of the Lease and elsewhere, Landlord's costs for the FF&E shall not exceed $300,000 and Tenants shall receive no credit should the costs of the FF&E be less than $300,000.

2

Tenant undertakes and agrees to provide Landlord a list of the FF&E described herein in a timely fashion and sufficient to order the FF&E and install it so as not to hinder or delay construction of the Improvements, substantial completion of the Building and issuance of the Temporary Occupancy Certificate, or similar document.

Capitol provided architectural plans, stamped June 7, 2019, and these plans were incorporated into the lease. The architectural plans included an equipment schedule with a list of the FF&E identifying the equipment item, model and manufacturer, and the furnishing vendor. Keystone received the architectural plans with equipment schedule in June 2019 before the parties signed the lease. Focus Brands requires its franchisees to use specific vendors for the purchase of FF&E.

On September 6, 2019, Capitol forwarded an order, flagged as high importance, for the FF&E items from vendor NCR to Keystone. (The NCR order). The NCR order was for approximately $26,000 for the point of sale system and kitchen video board. The NCR order included the model, part description, quantity, price, and payment instructions for Keystone. Keystone did not place or pay for the NCR order, despite having all the information it needed to do so.

That same day, September 6, Capitol received an order for FF&E from TriMark, an additional approved vendor of restaurant equipment for Schlotzsky's franchises. (The TriMark order). The TriMark order form stated that the FF&E could be purchased by check, cash, certified funds, or credit card. Capitol emailed the TriMark order to Keystone that day, and Capitol stated it approved the order. Capitol's email included the direct contact information at TriMark, informed Keystone that TriMark required a fifty percent deposit to order the items and that the remaining fifty-percent would be due before the items shipped, and Capitol requested Keystone advise when it sent payment to TriMark. The TriMark order was for approximately $200,000 of FF&E, and Capitol informed Keystone that the TriMark order was "the main FFE

3

order." Keystone knew it was a matter of urgency "on all sides" because it knew that TriMark needed approximately six weeks to process and deliver the items.

After receiving the TriMark order and instructions on how to place it, Keystone expressed dissatisfaction with TriMark's standard ordering terms. Keystone believed it was unreasonable to pay a deposit of fifty percent to order the items and fifty percent before delivery, it wanted TriMark to pay any wiring fees for the order, it did not want to pay for any storage fees or installation, and it took issue with the freight price.

On September 13, 2019, Keystone emailed TriMark and advised TriMark that it needed to enter into a contract for goods and services with Keystone before Keystone would order and purchase the FF&E. Among other things, Keystone requested that the contract include a liquidated damages clause, that TriMark remove certain charges from the order, that TriMark pay for wiring fees, and that payment be made only upon delivery. Keystone stated that after TriMark agreed and signed the contract it would then "move forward."

TriMark was unwilling to agree to Keystone's extensive list of demands to modify its standard proposal terms. TriMark advised Keystone to send the deposit for the FF&E as soon as possible so TriMark could meet the requested delivery date. Keystone responded there was "work" to do before "any deposit, if it all." Keystone advised Capitol that "prepayment for the equipment [was] still a challenge" and that it "did not know how to bridge that." Keystone stated it would pay for the FF&E when it was delivered but not until then.

Keystone's communications became increasingly hostile as it blamed Capitol and TriMark for project delays and threatened to bring in attorneys. In mid-September 2019, when TriMark would not alter its standard proposal to meet Keystone's demands, Keystone stated that it "needed more comfort" in the form of an amendment to the lease from Capitol and a contract

between itself and TriMark. Keystone expressed that it would not let Capitol and TriMark "run a bad deal down [its] throat." On September 16, 2019, Keystone advised Capitol that its bank would fund the FF&E "under certain terms and conditions," including the FF&E vendor entering into an agreement with Keystone that satisfied Keystone's bank. Keystone also demanded that Capitol agree to amend the lease for rent to commence on either November 1, or when the store was open for business, whichever occurred earlier. On September 17, 2019, Keystone advised that the FF&E would be funded when Capitol and TriMark complied with Keystone's bank's requests. Keystone never placed the TriMark order for the FF&E.

On September 20, 2019, Keystone's attorney emailed Capitol and requested that Capitol execute a formal amendment to the lease providing that the rent and security deposit obligations begin no later than November 1, 2019. That same day, Capitol's attorney sent a certified letter to Keystone and its attorney advising that it was terminating all of Capitol's business relationships and dealings with Keystone.

On September 26, 2019, Keystone's attorney sent a certified letter and email to Capitol. The letter notified Capitol that Capitol was in material default under the lease for, among other things, failing to provide Keystone "the proper information and support" for the FF&E that would permit the project to be completed in a timely fashion.

In December 2019, Keystone filed suit against Capitol and the Frantzes. Keystone's petition included claims for quiet title, breach of lease, estoppel, and, against the Frantzes, breach of their personal guaranties. Capitol filed its answer, counterclaims, and third-party petition against Franklin.[1] In its answer, Capitol asserted an affirmative defense that Keystone anticipatorily breached the agreement.

---

[1] Capitol filed a third-party petition and counterclaims against Keystone. Capitol's counterclaims were for: (1) a declaratory judgment; (2) breach of contract; (3) breach of

The court held a bench trial on the matter, and entered its findings of fact, conclusions of law, and judgment. The trial court found no party proved any claims entitling them to damages and it entered judgment in favor of Capitol and the Frantzes and against Keystone on Keystone's breach of lease, breach of guaranty, and estoppel claims. The trial court specifically found that Keystone had failed to prove a breach of the lease by Capitol, and that it further found that Capitol was released from its lease obligations due to Keystone's anticipatory repudiation of the agreement.

Keystone appeals. Additional facts relevant to the disposition of the appeal are included below as we address Keystone's points on appeal.

## Standard of Review

On appeal from a bench-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *TCN Invs., LLC v. Superior Detail*, 588 S.W.3d 245, 249 (Mo. App. W.D. 2019) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We must defer to the trial court's factual determinations, reviewing the evidence in a light most favorable to the judgment and disregarding all contrary evidence." *Langdon v. United Restaurants, Inc.*, 105 S.W.3d 882, 886 (Mo. App. W.D. 2003).

"A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Herron v. Barnard*, 390 S.W.3d 901, 909-10 (Mo. App. W.D. 2013) (citation omitted). "A court will overturn a trial court's judgment under these fact-based

---

warranty; and (4) fraudulent concealment and inducement. In its judgment, the trial court found that Capitol did not prove that it was entitled to damages. Capitol does not appeal this determination.

standards of review only when the court has a firm belief that the judgment is wrong." *Id.* at 910 (citation omitted).

Because the trial court is entitled to disbelieve the evidence of the party bearing the burden of proof, even if the opposing party presents no contrary evidence, relief "based on a claim that the trial court's judgment against the party having the burden of proof is against the weight of the evidence is rarely granted." *Matter of Killian*, 561 S.W.3d 411, 417 (Mo. App. S.D. 2018) (citations and internal quotation marks omitted). *See also Interest of A.M.R.*, 673 S.W.3d 864, 873-74 (Mo. App. W.D. 2023).

Further,

> If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it . . . . Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.

*A.M.R.*, 673 S.W.3d at 873-74 (citations and internal quotation marks omitted).

## Discussion

### Point One: Whether Capitol Breached the Lease

In its first point, Keystone argues the trial court erred in concluding that Capitol did not breach the lease because the trial court's finding and judgment are against the weight of the evidence. Keystone argues that Capitol breached the lease by (1) failing to provide the required list of FF&E; and (2) by terminating the lease without cause and without giving Keystone the opportunity to cure.

### Whether Capitol Provided the Required List of Furniture, Fixtures and Equipment as Required under the Lease

Keystone's petition alleged a breach of lease agreement, which includes the following elements: "the existence of a valid lease, mutual obligations arising under the lease, that

defendant did not perform, and that plaintiff was thereby damaged by the breach." *CP3 BP Assocs. LLC v. CSL Plasma Inc.*, 645 S.W.3d 654, 660 (Mo. App. E.D. 2022). We interpret the terms of a real estate lease according to the rules of contract construction. *Id.*; *Dunn v. Baker*, 533 S.W.3d 831, 835 (Mo. App. E.D. 2017). We first determine if the agreement's plain language clearly addresses the issue. *Dunn*, 533 S.W.3d at 835. Our inquiry ends if the language is clear and addresses the disputed matter. *BMJ Partners v. King's Beauty Distrib. Co.*, 508 S.W.3d 175, 179 (Mo. App. E.D. 2016).

Keystone argues that Capitol breached the lease by failing to provide Keystone with a list of the FF&E that Keystone was to purchase for the property, as specifically provided for in Exhibit D. Keystone contends that its obligation under the lease was only to provide for and pay for the specific portion of the FF&E contained on a separate list provided by Capitol, so long as the cost did not exceed $300,000 and did not contain certain excluded items. The trial court concluded that Capitol satisfied its obligations under the lease and that it provided a sufficient list of FF&E for Keystone to order. The trial court's decision is not against the weight of the evidence.

Capitol provided Keystone the list of the FF&E in a timely fashion as required under the lease. The credible evidence presented at trial established that Capitol gave Keystone an equipment schedule, finish schedules, vendor list, and other documentation from approved vendors from June 26, 2019, through September 17, 2019. Specifically, the architectural plans, dated June 7, 2019, were incorporated into the lease and included an equipment schedule with a list of the FF&E identifying the equipment item, model, manufacturer, and the furnishing vendor. When asked at trial, Franklin admitted the equipment schedule contained a list of the FF&E, and that he was unable to identify a single piece of equipment that was needed for the

8

restaurant that was not on the equipment schedule. The equipment schedule with the list of FF&E was sufficient for Capitol to fulfill its obligation under the lease, specifically Exhibit D, and for Keystone to then order the necessary FF&E.

In addition to providing the equipment schedule to Keystone, on September 6, 2019, Capitol sent the accepted purchase orders from FF&E vendors TriMark and NCR with instructions on how Keystone could order the FF&E.

Keystone argues that the FF&E list required by Exhibit D was distinct from the architectural plans. Keystone maintains that it was not contractually obligated to "divine a list" of the FF&E it was obligated to purchase from the architectural plans, nor to "cobble together" a list from Capitol's third-party vendors. Keystone argues that its sole obligation under the lease was to pay for $300,000 of the FF&E contained on a "separate list" provided by Capitol.

This reading, that Capitol needed to provide "a separate list" of the FF&E distinct from the architectural plans, is not supported by Exhibit D's plain language. Exhibit D provided that "Tenant shall provide Landlord a list of the FF&E described in the Lease for installation by Landlord or its agents." Exhibit D also stated that Capitol would undertake and agree to provide Keystone a list of the FF&E "in a timely fashion and sufficient to order the FF&E and install it so as not to hinder or delay construction of the [i]mprovements, substantial completion of the [b]uilding and issuance of the [t]emporary [o]ccupancy [c]ertificate, or similar document." As we have already said, the list of the FF&E was included in the architectural plans which had an equipment schedule with a list of equipment items, model numbers, manufacturers, and furnishing vendors. The lease's plain language did not require Capitol to supply a "separate list" of the FF&E, only that Capitol provide Keystone "a list of the FF&E described in the [l]ease for

9

installation by [l]andlord or its agents" and that Capitol would do so in a timely fashion. Capitol fulfilled its obligations under Exhibit D.

Keystone also argues that Capitol violated the implied term of good faith and fair dealing by failing to aid in identifying and purchasing the FF&E, which directly prohibited Keystone's performance. The evidence at trial refutes Keystone's claim and shows that Capitol worked to help facilitate the FF&E orders. In early September 2019, Capitol sent Keystone detailed invoices from NCR and TriMark with ordering instructions, and it advised TriMark to work directly with Franklin and Keystone. Keystone was frustrated with the business practices, procedures, and payment terms that TriMark dictated. Keystone's dissatisfaction with TriMark's standard ordering terms and TriMark's unwillingness to agree to Keystone's various demands do not constitute a breach of the lease by Capitol. Capitol was not contractually obligated to negotiate acceptable terms—dictated by Keystone—with non-party vendors in order for Keystone to order the first $300,000 of the FF&E.

The trial court's conclusion that Capitol did not breach the lease and that it sufficiently provided a list of the FF&E to Keystone is not against the weight of the evidence.

### Whether Capitol Terminated the Lease Without Cause and Without Giving Keystone the Opportunity to Cure

Next, we address Keystone's argument that Capitol breached the lease by sending a termination letter without a valid contractual basis for termination and without giving Keystone the opportunity to cure.

Article 32 of the lease required that Capitol provide Keystone with thirty days' written notice to cure any alleged failure by Keystone to perform a lease obligation. Article 32 provided in part:

10

> If Landlord shall fail to perform any obligation under this Lease required to be performed by Landlord, Landlord shall not be deemed to be in default hereunder nor subject to claims for damages of any kind, unless such failure shall have continued for a period of thirty (30) days after written notice thereof by Tenant[.]

Keystone argues that Capitol's September 20 letter terminated and breached the lease and Capitol failed to provide Keystone an opportunity to cure as required.

"If one party to a contract materially breaches that contract, the aggrieved party may cancel the contract and be relieved of its obligation under the contract." *CP3 BP Assocs. LLC*, 645 S.W.3d at 660 (citation omitted). "For a breach to be deemed material and justify a unilateral termination of the lease, the breach must be one that relates to a vital provision of the agreement, i.e. one that goes to the very substance or root of the agreement and cannot relate simply to a subordinate or incidental matter." *Id.* at 661 (citation and internal quotations omitted). The materiality of a breach is a question of fact. *Id.*

As described in more detail below, Keystone breached the lease by repudiation when it refused to order the FF&E unless Capitol signed a lease amendment. This was a material breach of the lease. The restaurant could not open for business without the necessary FF&E. After Keystone failed to order the FF&E as listed on the equipment schedule that was provided by Capitol, Capitol was relieved of its obligations under the lease, including the requirement of giving Keystone an opportunity to cure its default.

Point one is denied.

**Point Two: Whether Keystone Anticipatorily Breached the Lease by Repudiation**

In its second point, Keystone argues that the trial court erred in finding Keystone anticipatorily breached the lease by repudiation because the finding is against the weight of the evidence.

11

"Missouri recognizes the doctrine of anticipatory breach." *Pro. Funding Co. v. Bufogle*, 655 S.W.3d 243, 248 (Mo. App. E.D. 2022). "Anticipatory breach of contract by repudiation occurs when a party to a contract repudiates that contract by manifesting, by words or conduct, a positive intention not to perform." *Id.* "When this manifestation takes place, the duty of the other party is terminated." *Cork Plumbing Co. v. Martin Bloom Assocs.*, 573 S.W.2d 947, 956 (Mo. App. 1978). "[A]n anticipatory repudiation may be shown only by the disclosure, by express statements or otherwise, of a positive intention not to perform the contract." *Id.*

The trial court found that Keystone manifested, by both words and conduct, a positive intention not to perform, and that Keystone, in September 2019, repudiated the lease by refusing to pay for the FF&E unless Capitol signed a lease amendment. This finding is not against the weight of the evidence. Keystone had not performed its obligation under the lease to order and pay for the first $300,000 of FF&E and its intentions were evident. Keystone was not going to perform this obligation unless and until Capitol agreed to a new deal in the form of a lease amendment and TriMark agreed to enter into a deal with Keystone on Keystone's terms.

It was clear from the testimony and the voluminous exhibits presented at trial that Keystone was frustrated with the business practices, procedures, and payment terms as dictated by Schlotzsky's approved FF&E vendor TriMark. As of September 6, 2019, nearly two months into the restaurant's construction, Keystone had still not ordered and paid for the necessary FF&E. Between September 6, 2019, and September 20, 2019, Keystone made repeated demands of the FF&E vendor TriMark for additional concessions, including, but not limited to, TriMark entering into a contract with Keystone for goods and services with a liquidated damages

provision, a payment schedule, and allowing Keystone to order the FF&E without placing a deposit. [2]

Keystone sent email after email and left voicemails complaining about TriMark's standard ordering terms and giving Capitol various excuses for refusing to order and pay for the necessary FF&E. None of the proffered reasons for Keystone's failure and refusal to order the FF&E were legitimate reasons excusing its non-performance under the lease.

Keystone's demands that Capitol sign the lease amendment were unrelenting and were presented as an ultimatum to Capitol, otherwise Keystone would not purchase the FF&E. Franklin admitted at trial that he needed Frantz to agree to the lease amendment and that it was a "definitive" demand. Franklin explained that the amendment was necessary to the deal if the parties wanted "to move the deal forward." Franklin's September 20, 2019, voicemail—the same day his attorney sent the lease amendment and request for it to be signed—said, "My attorney has drafted an amendment to the lease agreement. I am going over it now. . . absent getting that done, um, we'll just . . . I guess work it out in court."

Further, Keystone's demands for Capitol to sign the lease amendment before Keystone would purchase the FF&E constituted a material change and a repudiation of the parties' original lease. Keystone's attorney prepared the lease amendment and sent it to Capitol as part of Keystone's unrelenting refusal to pay for the FF&E unless and until Capitol signed the lease amendment. The amendment required that Capitol start paying rent on November 1, 2019, no matter the state of the building, equipment and restaurant, and with or without a temporary certificate of occupancy. This was completely different from the parties' original signed lease,

---

[2] A national account manager for TriMark testified that requiring customers to place a deposit before equipment is shipped is a standard practice in the FF&E industry.

under which rent was abated until the improvements to the building were substantially complete, the FF&E was installed, and the temporary occupancy certificate was obtained.

Keystone's words and actions evidenced its positive intention that Keystone would not perform its obligations under the lease to purchase the first $300,000 of FF&E.  When Capitol sent the September 20 letter notifying Keystone that Capitol was terminating the lease,  Keystone had not performed its contractual obligation to order and pay for the first $300,000 of FF&E and its intentions that it would not do so were apparent.  The trial court's finding that Keystone anticipatorily breached the lease by repudiation is not against the weight of the evidence.  Point two is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Janet Sutton, Judge

W. Douglas Thomson, P.J., and Karen King Mitchell, J. concur.

14